IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Craig Petty, ) | |
| ) | Civil Action No. 6:04-22916-JFA-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jo Anne B. Barnhart, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security Administration that the plaintiff was not entitled to disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

On July 17, 2002, the plaintiff filed applications for DIB and SSI alleging disability beginning May 10, 2002. The application was denied initially and on reconsideration. On August 18, 2003, the plaintiff requested a hearing, which was held on November 7, 2003. Following the hearing, at which the plaintiff, his representative and a vocational expert appeared, the administrative law judge considered the case *de novo*, and

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

on April 22, 2004, determined that the plaintiff was not entitled to benefits. This determination became the final decision of the Commissioner when it was adopted by the Appeals Council on September 9, 2004.

In making the determination that the plaintiff was not entitled to benefits, the ALJ made the following findings:

> (1) The claimant meets the nondisability requirements for a period of disability and Disability insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> (2) The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (3) The claimant's acute chronic hepatitis C, jaundice, cirrhosis of the liver, and only one functioning kidney are "severe" impairments, based upon the requirements in the Regulations (20 CFR §§ 404.1520 and 416.920).
>
> (4) This medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5) The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> (6) The claimant has the following residual functional capacity: to lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit, walk, or stand for six hours in an eight-hour workday. Additionally, he can occasionally stoop, balance, crawl, or climb.
>
> (7) The claimant's past relevant work as a gate guard, or a substance abuse counselor did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR §§ 404.1565 and 416.965).
>
> (8) The claimant's medically determinable impairments do not prevent the claimant from performing his past relevant work.
>
> (9) Based on an exertional capacity for light work, and the claimant's age, education, and work experience, Medical-Vocational Rule 202.15, Appendix 2, Subpart P, Regulations No.4 would direct a conclusion of "not disabled."

> (10)   The claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.
>
> (11)   The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(e) and 416.920(e)).

The only issues before the court are whether the findings of fact are supported by substantial evidence and whether proper legal standards were applied.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her

4

conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### **EVIDENCE PRESENTED**

The plaintiff was 53 years old at the time of his hearing. He has a twelfth-grade education with two years of college, and his past work experience includes employment as a security guard, a carpenter, a counselor, and as a cabinet builder. The plaintiff alleges that he became disabled on May 10, 2002, due to acute chronic hepatitis C, jaundice, cirrhosis of the liver, and the fact that he only has one working kidney.

The record reveals that the plaintiff has a history of hepatitis C which was diagnosed in 1998. In February 2000, he had his right kidney removed because of renal cell cancer. His treating physician, Dr. Stephen Braun, D.O., with Beaufort-Jasper Hampton Comprehensive Health Services, began treating the plaintiff in late 2000 for increased jaundice, nausea, fatigue, and pruritus. Dr. Braun indicated on the office visit of June 17, 2002, that the plaintiff had swelling in his abdomen which extended in to his hips. He also had increased jaundice for no apparent reason. Dr. Braun referred him to Dr. Kuntz (Tr. 106-13).

On June 27, 2002, the plaintiff went to the emergency room at the Memorial Health University Medical Center because of increasing weakness and a severe case of jaundice that had begun approximately three weeks prior. The plaintiff had a history of heavy ethanol abuse as well as a positive past history for IV drug use. His liver function tests, as well as his bilirubin, were elevated. He was treated and released (Tr. 132-59).

On July 5, 2002, the plaintiff was re-admitted through the emergency room due to increased abdominal pain. He was diagnosed with an alcohol-related liver disease with

concomitant hepatitis C. His mild to moderate lower abdominal pain was related to ascites. The plaintiff was treated and released on July 9, 2002 (Tr. 120-31).

On March 19, 2003, the plaintiff underwent a consultative examination by Dr. Michael K. Mikkelson in which he complained of chronic fatigue. The plaintiff stated that when he attempted to do light housework for up to an hour or two in a day, he would become very fatigued and have to rest for the remainder of the day. Dr. Mikkelson noted that the plaintiff's examination was completely normal. Additionally, the record reflected that the plaintiff stated that he last drank alcohol in October 2002 (Tr. 160-61).

On April 22, 2003, a neuropsychological consultation was performed by Dr. John M. Taylor, Ph.D., of the South Carolina Department of Vocational Rehabilitation. Dr. Taylor indicated that the plaintiff appeared in no acute emotional distress. His vocabulary and grammar skills were of average range concerning his intellectual functioning. His affect was appropriate and his thought processes were oriented and intact to person, place, and time. The results of his MAB-II testing revealed a verbal IQ of 109, a performance IQ of 95, and a full scale IQ of 102, which placed his functioning ability in the "average" range of intelligence. Dr. Taylor stated that the plaintiff would have difficulty with jobs having high time demand as well as jobs requiring him to attend to several tasks at one time; however, he noted the plaintiff had the capability for learning multiple tasks and performing these reliably. Finally, Dr. Taylor's diagnostic impression revealed that the plaintiff had a mild cognitive impairment. His performance was consistent with the cognitive changes associated with chronic illnesses such as the plaintiff's liver disease. Throughout the examination process, the plaintiff stated that he fatigued easily and was usually tired after just being up for three to four hours. In regard to his activities of daily living, he was totally independent. He was restricted to occasional lifting, kneeling, crouching, stooping, and crawling; he could frequently sit, walk, and stand, but must have the ability to change positions frequently when needed; and he could never climb ladders. Upon discharge, the

final results of his evaluation revealed that the plaintiff was cooperative, motivated, and hard working in the physical areas, although he took frequent rest breaks. The plaintiff expressed an interest in learning more about computers, and the job of graphic designer was identified as a possible job placement (Tr. 170-87).

The plaintiff was under the care of Dr. Glenn P. Gwozdz, a gastroenterologist, beginning in December 1998. The plaintiff saw Dr. Gwozdz one time for each of the following years: 1998, 1999, 2000, and 2001, and he began seeing Dr. Gwozdz on a regular basis in June 2002. The plaintiff was treated for jaundice, hepatitis C, cirrhosis of the liver, and fatigue. He was also counseled on his frequent alcohol abuse. The plaintiff had complaints of pain and swelling in his abdomen, as well as low back pain that radiated up into his shoulders. During the April 2003 office visit, Dr. Gwozdz noted that when he questioned how the plaintiff was doing, he replied "not too bad." There was no evidence of jaundice or pruritus. The plaintiff was referred to the vocational rehabilitation for job retraining. Additionally, Dr. Gwozdz provided a physician's statement on September 10, 2003, that noted the plaintiff was unable to work due to extreme fatigue, and that he needed antiviral therapy for hepatitis C (Tr. 196-215).

At the hearing, the plaintiff testified that he last worked at a full-time job in April 2001. He stated that he tried several different part-time jobs and tried other jobs that he was either terminated from or had to be let go from because of his medical problems. He indicated that he was currently attending a training program sponsored by the Vocational Rehabilitation Center to learn how to use a computer. The plaintiff stated that he last drank alcohol in October/November 2002 and last smoked marijuana about 3-4 months prior to the hearing. He stated that his daily activities consisted of doing dishes, laundry, folding clothes, and cleaning the bathroom and kitchen. The plaintiff testified that it took him longer to accomplish a task due to his extreme fatigue and hepatitis C complications. He stated that he must take frequent breaks lasting about 20-25 minutes at a time. He stated that he would

need to rest approximately three hours in an eight-hour day. The plaintiff also stated that he drives, watches television, reads, and either sits or walks on the beach for a couple of hours. Finally, he testified that he was not on any medication for his hepatitis C because he could not afford the medication.

## **ANALYSIS**

The plaintiff alleges disability commencing May 10, 2002, due to acute chronic hepatitis C, jaundice, cirrhosis of the liver, and the fact that he has only one working kidney (Tr. 16). The ALJ found that the plaintiff retained the residual functional capacity to perform unskilled work that required only occasional stooping, squatting, or climbing. The ALJ further found that the plaintiff should never crawl or climb a rope, ladder, or scaffolding. Additionally, the ALJ found that the plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, and he could walk, stand, or sit for six hours in an eight-hour day. He also stated the plaintiff must have the ability to alternate between sitting and standing for employment purposes and could only occasionally climb, balance, stoop, crouch, crawl, and kneel. At the hearing, the ALJ asked the vocational expert to consider a hypothetical individual the same age and with the same education and work experience as the plaintiff. He asked the expert to further assume the individual retained the capability of lifting 20 pounds on an occasional basis and ten pounds on a frequent basis, could sit six of eight hours, could stand six of eight hours, and could walk six of eight hours, and would have to have a sit/stand option at will. He further noted that the person would be able to climb, balance, stoop, crouch, crawl, and kneel only occasionally (Tr. 268). In response to the ALJ's hypothetical question, the vocational expert, Dr. Dixon Pearsall, testified that such a person could perform the claimant's past relevant work as a gate guard and peer counselor (Tr. 269). Accordingly, using the Medical-Vocational Guidelines ("the Grids") as a framework for decision-making, the ALJ found the plaintiff was not disabled (Tr. 22).

The plaintiff did not file a brief in support of his complaint,[2] and, accordingly, the defendant did not file a response brief in support of the Commissioner's decision. Therefore, this court will review the ALJ's decision to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.

The ALJ found that the plaintiff's allegations regarding his limitations were not "totally credible" (Tr. 22). Specifically, he found as follows:

> Although the claimant had complaints of extreme fatigue, he was able to take care of his personal needs, as well as perform odd jobs when he found them. He reported that to help support himself, he would work for rent or food. He described daily activities such as walking or sitting on the beach for hours, and performing household chores with only minimal difficulty. Additionally, his treating physician did not indicate in the treatment records . . . restrictions or limitations concerning any of the claimant's complaints. Moreover, the claimant reported on his Claimant's Medications Form dated October 17, 2003, that he was not taking any medications other than extra strength Tylenol for occasional headaches. Apparently, he is waiting for approval from the drug company to be given a year regimen of hepatitis C treatment, but currently he has not taken any medication for his symptoms of fatigue, cirrhosis of the liver, or the hepatitis C condition. Although the claimant lost his right kidney to cancer back in February 2000, it would appear that the treatment had been generally successful in controlling his symptom, because there are no further treatment records in regard to this condition.

(Tr. 19).

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with

---

[2]This action was dismissed for lack of prosecution on January 18, 2005, by the Honorable Joseph F. Anderson, Jr., Chief United States District Judge for the District of South Carolina, because the plaintiff had failed to respond to certain Special Interrogatories as ordered by the court. However, on February 4, 2005, the plaintiff filed his responses and noted that they had been mailed in December 2004. For good cause shown, Chief Judge Anderson vacated the order of dismissal and remanded the action to this court for further review. Following the filing of the defendant's answer, this court extended the time period for the plaintiff's brief until November 7, 2005, but no brief was filed. Recently, mail sent to the plaintiff by the Clerk's Office was returned as "undeliverable" on February 28, 2006.

objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7 states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7p. Based upon the foregoing, it appears that the ALJ properly considered the plaintiff's subjective complaints.

One of the plaintiff's treating physicians, Dr. Gwozdz, provided a physician's statement on September 10, 2003, stating that the plaintiff was unable to work due to extreme fatigue. He further stated that the plaintiff needed antiviral therapy for hepatitis C (Tr. 196-97). The ALJ found as follows:

> The undersigned [ALJ] reviewed the opinion of Dr. Gwozdz and found that his own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled. Furthermore, Dr. Gwozdz only saw the claimant a total of seven times since June 2002. It would appear that Dr. Gwozdz apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained [above], there exists good reasons for questioning the reliability of the claimant's subjective complaints.

(Tr. 18). The ALJ also found support for his finding in the office notes for April 2003, in which Dr. Gwozdz noted that the plaintiff stated he was doing "not too bad." Dr. Gwozdz also noted that there was no evidence of jaundice or pruritus. The plaintiff had been referred to vocational rehabilitation for job retraining. Further, at the office visit on September 12, 2003, Dr. Gwozdz noted that the plaintiff was waiting for Medicaid and Social Security Disability to start before beginning the hepatitis C medications. Dr. Gwozdz reported that the plaintiff's appetite was good, he was sleeping well, and he had no jaundice or pain. The plaintiff reported that "he had not had any alcohol and that he felt good" (Tr. 18).

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §416.927(d)(2) (2004); *Mastro v. Apfel*, 370 F.3d 171 (4th Cir. 2001). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. §404.1527(d)(2)-(5). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

11

*Id.* 1996 WL 374188, *4.

While the ALJ stated that he "reviewed the opinion of Dr. Gwozdz and found that his own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled," he did not indicate what weight, if any, he gave to Dr. Gwozdz's opinion. As noted above, even if an opinion does not meet the test for controlling weight, that does not mean that the opinion should be rejected. Upon remand, the ALJ should consider the weight to be given to Dr. Gwozdz's opinion in accordance with the above cited ruling and regulations.

On April 22, 2003, John M. Taylor, Ph.D., performed a neuropsychological examination of the plaintiff upon reference to the South Carolina Department of Vocational Rehabilitation. One of his findings was that the plaintiff would have difficulty with jobs having high time demand and jobs requiring him to attend to several tasks at one time (Tr. 177, 186). The ALJ "disagreed with his diagnostic impression of the claimant's ability to handle several different tasks at one time" (Tr. 18). In support of his finding, the ALJ stated as follows:

> The claimant was able to handle all of his personal needs, perform household chores, and had time to walk on the beach. Furthermore, he was able to work out a support system, where he performed odd jobs and when these were not available, he worked for rent or for food in exchange for money. On top of this, vocational rehabilitation set up computer classes for him, . . . which he attended . . . for seven months, five days a week, eight hours per day. These classes contained lectures, theory applications, and homework with lots of practice. The claimant emphasized that he caught the bus there and back every day. Additionally, the claimant collected unemployment benefits for 26 weeks, which required him to seek employment opportunities at two different job sites per week . . . . Furthermore, the claimant did not stop working due to his impairments. The record reflects that he was fired from his last job. Consequently, Dr. Taylor's opinion is without substantial support from other evidence of the record, which obviously renders it less persuasive. The evidence supports that the claimant was able to handle several different projects at one time, including his mental ability to survive any situation that came up.

12

(Tr. 18).

Under the Social Security regulations, medical opinions include "statements from physicians and psychologists." 20 C.F.R. §404.1527. As set forth above, the regulations provide that medical opinions should be considered in accordance with the factors set forth in 20 C.F.R. §404.1527(d) in deciding what weight the opinion should be given. In his analysis of Dr. Taylor's opinion, the ALJ set forth evidence of record showing that the plaintiff had the "mental ability to survive any situation that came up." While the evidence does show that the plaintiff could handle his personal needs, it does not appear to contradict the test results and opinion of Dr. Taylor that, while the plaintiff was capable "of learning multiple tasks and performing these reliably," he would have difficulty with "high time demands and jobs requiring him to attend to several tasks at one time" (Tr. 186). Accordingly, upon remand, the ALJ should include this limitation in his consideration of the plaintiff's residual functional capacity.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

s/William M. Catoe
United States Magistrate Judge

April 21, 2006

Greenville, South Carolina